### COMMONWEALTH *vs.* LAWRENCE TOLLIVER & another.

Bristol.    November 22, 1875. — January 4, 1876.    COLT, J., absent.

On the trial of an indictment for robbery, it appeared that the defendant was not arrested until the end of the third day after the robbery, and the evidence was conflicting whether he had been concealing himself during the whole or any part of that time. To show such concealment the government called as a witness a policeman, who assisted in the arrest, and asked him, How soon after the robbery did you commence looking for the defendant? *Held*, that the question was rightly permitted to be answered.

On the trial of an indictment for robbery, the government offered to prove certain confessions by the defendant, which the judge excluded as having been obtained by promises and threats made to him by officers. The defendant afterwards took the stand and testified in his own behalf, and upon cross-examination was asked by the government what statements he had made in the interview in which the confessions were made. The judge ruled that having made himself a witness, the inquiry could be made whether he made statements inconsistent with his testimony on the stand, as affecting his credit. *Held*, that the instruction was sufficiently favorable to the defendant.

On the trial of an indictment for robbery, the government introduced evidence that the defendant had concealed himself to avoid arrest. The defendant offered evidence tending to show that instead of concealing himself, he was publicly walking about the streets before his arrest. The government then offered to show that while walking about the streets for an hour or two previous to the arrest, the defendant had assumed a disguised gait and manner. The defendant had introduced no evidence upon this point, and the judge ruled that such testimony could be properly given, although no testimony had been given by him or question asked of him in relation to any disguise adopted by him. *Held*, that it was within the discretion of the presiding judge to admit the evidence, and that the ruling was correct.

On the trial of an indictment for robbery, the person robbed testified that she was robbed of a ten dollar bill, a five dollar bill, and three two dollar bills, but she was unable to say whether they were bank bills or not. When the defendant was arrested three days after the robbery, he was found to have in his possession two five dollar bank bills, and two two dollar bills, one of which was a bank bill, and the other not. The person robbed had testified that in the struggle with the robbers she bit the finger of one of them so as to cause a wound, and when arrested there was a wound upon the corresponding finger of the defendant's hand. There was a stain on one of the two dollar bills which the government contended was a blood stain,

but there was no evidence that it was such except what appeared on inspection, and there was no evidence of the identity of the money other than this. The person robbed could not identify the money found upon the defendant as hers, or any of it, and there was no other evidence as to what she was robbed of. *Held,* that the question was rightly submitted to the jury whether any of the bills found on the defendant were taken from the person robbed.

INDICTMENT charging Lawrence Tolliver and Cornelius Randall with the robbery, on September 1, 1875, from the person of Catherine Byron, of " three bank bills, each of the denomination of five dollars and each of the value of five dollars ; three bank bills each of the denomination of two dollars, and each of the value of two dollars, and one bank bill of the denomination of ten dollars, and of the value of ten dollars, of the goods and moneys of said Catherine Byron."

At the trial in the Superior Court, before *Wilkinson,* J., the evidence of the government tended to show that Catherine Byron, the person named in the indictment, went to ride with the defendant Randall, at his invitation, on the evening of September 1, 1875; that while so riding with him in the suburbs of the city, she was attacked by two persons, beaten and bruised, and robbed of a sum of money ; and it was claimed by the government, and there was some evidence tending to show, that one of the attacking party was the defendant, Tolliver, and that Randall was consenting to the same in consequence of some previous understanding. Tolliver was not arrested until the end of the third day after the robbery, and the evidence was conflicting as to whether he had been concealing himself and avoiding the whole or any part of that time ; and to show that he had so concealed himself, the district attorney called as a witness one of the policemen of New Bedford, who assisted in his arrest, and asked him, " How soon after the robbery did you commence looking for Tolliver ? " The defendant, Tolliver, objected to the inquiry as inadmissible for the purpose for which it was put ; but the judge allowed the question to be put to the witness.

Samuel Brown was called by the government to testify to certain statements in the nature of confessions, and also implicating Tolliver, made to him, Brown, by Randall, while lying in jail awaiting trial ; but upon examination it was found as a fact by the judge that whatever was said by Randall upon that occasion

was said by him while unduly and improperly influenced by promises or threats made to him by officers and others, and upon that finding excluded the testimony proposed to be offered. Randall afterwards took the stand and testified in his own behalf ; and upon cross-examination was inquired of by the district attorney in relation to the statements made by him to Brown, and was asked by the district attorney what statements he had made to Brown in the interview in the jail before referred to. The defendants objected to the inquiry proposed, but the judge ruled that having made himself a witness, the inquiry could be made whether he had made statements inconsistent with his testimony on the stand as affecting his credit.

Evidence was offered by the government in chief, tending to show that during a portion of the time between the robbery and his arrest, Tolliver was in concealment to avoid arrest. Tolliver then testified in his own behalf, and stated with particularity his whereabouts during the whole of said time ; and particularly (in answer to questions by the district attorney) for a short time before his arrest. The district attorney then called a witness in rebuttal, who testified without objection to his whereabouts just previous to his arrest, contradicting to a certain extent the testimony of Tolliver upon the same point. The district attorney then offered to show by this same witness that while walking about the streets for an hour or two before his arrest, Tolliver had assumed a disguised gait and manner. No evidence had been given by the defence upon this point, and Tolliver objected to the same, on the ground that it was not admissible at that stage of the case, not being in rebuttal ; but the judge ruled that such testimony could be properly given although no testimony had been given by him or question asked of him in relation to any disguise adopted by him, and admitted the evidence.

Catherine Byron testified that in the struggle with the robbers she bit the finger of one of them so as to cause a wound ; and when Tolliver was arrested there was a wound upon the corresponding finger of his hand. She also testified that she was robbed of a ten dollar bill, a five dollar bill, and three two dollar bills ; but whether they were bank bills or not she was wholly unable to say. When Tolliver was arrested three days afterwards, he was found to have in his possession, two five dollar

bank bills, and two two dollar bills, one of which was a bank bill and the other not. There was a stain on one of the two dollar bills which the district attorney claimed was a stain of blood, but there was no evidence that it was such except what appeared on inspection, and there was no evidence of the identity of the money other than this ; and Catherine Byron could not identify the money found upon Tolliver as hers, or any of it, and there was no other evidence as to what she was robbed of. Upon this evidence the defendants asked the judge to rule that there was no evidence of the robbery of any bank bills, as charged in the indictment; but the judge ruled that the evidence upon this point was sufficient to go to a jury.

The jury found each defendant guilty ; and the defendants alleged exceptions to the rulings and refusals to rule.

*H. M. Knowlton*, for the defendants.

*W. C. Loring*, (*C. R. Train*, Attorney General, with him,) for the Commonwealth.

AMES, J. As one circumstance having a tendency to prove guilt on the part of the defendant, Tolliver, the fact that he concealed himself immediately after the alleged robbery was admissible. This fact could only be proved by evidence that he was sought for and not readily or easily found. Such evidence would be of little weight unless it were nearly connected with the time of the robbery, and therefore, among other particulars in regard to the attempt made to find him, it was necessary and proper to inquire how soon after the robbery the search for him began.

By availing himself of the right to take the stand as a witness, the defendant became a general witness in the case, subject to the same tests of truthfulness, and the same rules as to examination and cross-examination as are applicable to all other witnesses. Being sworn to tell the truth, the whole truth, and nothing but the truth, he waived all right to keep anything back, even in the case of questions, the answers to which would tend to criminate himself. *Commonwealth* v. *Lannan*, 13 Allen, 563. *Commonwealth* v. *Mullen*, 97 Mass. 545. *Commonwealth* v. *Bonner*, 97 Mass. 587. *Commonwealth* v. *Nichols*, 114 Mass. 285. Among the modes of impeachment, he, like any other witness may be cross-examined as to a conflicting account of the matter given by him on some other occasion. Such an inquiry may be

gone into, not for the purpose of proving the truth of the former account, but as an impeachment of his credit as a witness. *Day* v. *Stickney*, 14 Allen, 255. He would still be at liberty to testify that his alleged confession was not true, and to offer such explanation as to the inducements and circumstances under which he gave it as he may see fit. *Commonwealth* v. *Howe*, 9 Gray, 110. The limitations to which the course of inquiry upon this point was subjected by the court gave to the defendant all the protection to which he was entitled.

The defendant, Tolliver, having offered evidence tending to show that instead of concealing himself, he was publicly walking about the streets before his arrest, it was wholly within the discretion of the presiding judge to allow evidence, on behalf of the prosecution and by way of rebuttal, to the effect that while so in the streets he was under an attempted disguise. The ruling upon that point is not open to exception.

The evidence of the person who had been robbed was not relied upon as sufficient, taken by itself, to identify with entire certainty the bills which had been taken from her. The partial correspondence between some of the bills which she had lost and those found upon Tolliver, three days after the robbery, was evidence competent to be considered by the jury, especially when taken in connection with the stain upon one of the bills which, it was argued, was occasioned by blood from the wound upon the finger of one of the robbers, as described in the bill of exceptions. Some of the bills found upon his person answered to the description contained in the indictment, and we cannot say upon this report that there was no evidence tending to identify one or more of them. Its weight and effect were for the jury to consider.

*Exceptions overruled.*