MELTON *v.* STATE.

(Division B. Dec. 9, 1929.)

[124 So. 802. No. 28181.]

**W. I. Stone**, of Coffeeville, for appellant.

**W. A. Shipman**, Assistant Attorney-General, for the state.

Argued orally by **W. I. Stone**, for appellant, and by **W. A. Shipman**, Assistant Attorney-General, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellant was indicted upon a charge of murder, and was convicted of manslaughter. The commission of the homicide by appellant is admitted by him; that it was unprovoked and was without any sort of excuse or justi-

fication is also admitted, except that he says he was in such a state of complete intoxication at the time as to be utterly destitute of reason and wholly incapable, as he contends, of the essential specific intent.

At an early day in this state, in Kelly v. State, 3 Smedes & M. (11 Miss.) 518, it was held that, in a prosecution for homicide, voluntary intoxication of the accused is no defense. This has been reaffirmed in Gordon v. State (Miss.), 29 So. 529, and Butler v. State (Miss.), 39 So. 1005. The rule seems to be practically universal. Wharton on Homicide (3 Ed.), 805; 1 McLain, Crim. Law, sections 159, 162; Underhill, Crim. Ev. (2 Ed.), section 164; 16 C. J., p. 104 et seq.

Appellant contends, however, that the cases heretofore adjudged in this state have all been of partial intoxication, not cases of complete or absolute intoxication. The record shows that, while the deceased was attempting to do a friendly act towards appellant, and without any reason on the part of anybody there present to suspect danger, appellant suddenly announced with an oath that he was going to kill deceased, and immediately shot him. Upon such a record we would be at a loss how or where to draw a line between partial intoxication, and the so-called complete intoxication. The dangerous ground that would be entered upon in the attempt to draw such a line admonishes us against the venture, and compels us to remain within the established doctrine that voluntary intoxication is no defense.

"Such a principle is absolutely essential to the protection of life and property. In the forum of conscience there is no doubt considerable difference between a murder deliberately planned and executed by a person of unclouded intellect, and the reckless taking of life by one infuriated by intoxication; but human laws are based upon considerations of policy, and look rather to the maintenance of personal security and social order, than to an accurate

discrimination as to the moral qualities of individual conduct. But there is, in truth, no injustice in holding a person responsible for his acts committed in a state of voluntary intoxication. It is a duty which every one owes to his fellow-men and to society, to say nothing of more solemn obligations, to preserve, so far as it lies in his own power, the inestimable gift of reason. If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable. But if by a voluntary act he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which in that state he may do to others or to society.'' People v. Rogers, 18 N. Y. 9, 18, 72 Am. Dec. 484, 488, 489.

Appellant was convicted, not of murder, but of manslaughter. We are not called on, therefore, to discuss or to express any opinion whether, or, if so, when and under what circumstances, voluntary intoxication may be considered in the matter of reducing the offense to manslaughter.

Affirmed.