## GREEN *v.* STATE.

(Division B. April 10, 1939.)

[187 So. 745. No. 33505.]

**E. C. Barlow** and **Jas. F. Noble,** both of Brookhaven, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

Argued orally by **E. C. Barlow,** for appellant, and by **W. D. Conn, Jr.,** for the State.

**McGehee, J.,** delivered the opinion of the court.

Jack Green was jointly indicted with Woodrow Maddox, Jesse Richardson, and Maudie Lee Jackson, for the attempted robbery of J. M. Cotten and his wife, Mrs. Rhoda Cotten. The attempt to commit the robbery involved the use of firearms, and after a motion by the appellant for a change of venue had been overruled he was separately tried, convicted, and sentenced to serve a term of fifteen years in the state penitentiary.

J. M. Cotten, who was 89 years of age, was paralyzed and confined to his bed, and his wife, who was 81 years of age, was feeble and unable to get about except by the use of crutches. They lived alone out in a rural community where some of the neighbors were accustomed to stay with them at night, because of their old age and infirmities. On the night when this crime was committed, one Howard Jackson and his little eight year old girl were spending the night there. Howard Jackson's wayward daughter Maudie Lee Jackson, who was also indicted, was living with one of the other defendants, Woodrow Maddox, at Natchez, after having left the local community with him two or three weeks before the attempted robbery. Prior to leaving for Natchez with Maddox, she had stealthily taken the wardrobe keys from the Cotton home. Maddox in some way gained possession of these keys while he and Maudie Lee Jackson were living together in Natchez, and on one occasion he stated to her that he thought the Cottens had money. The crime is alleged to have been committed after 10 o'clock at night, and she testified that during the afternoon the appellant, Jack Green, together with Jesse Richardson, came in a truck to where she and Maddox were living in Natchez, and that these three men left Natchez together, stating that they would return after midnight. Immediately before the attempted robbery, three men arrived at the Cotten home in a truck, and whereupon Howard Jackson went out to in-

vestigate, upon "hearing the horn blow," and was approached by a person, whom he afterwards identified as being the appellant, who told him that they wanted to get some water to drink and also some for the radiator of their truck. Upon arriving at the well, he says that he was assaulted by this man and two others and carried to a nearby shop where his ankles and wrists were tied with wire, and he was told to "keep your mouth shut, we are going to make a quick job of it. We are after money." That two of the men had something over their faces, one of whom he recognized as Maddox (on account of his past acquaintance with him and from an observation of his shoes and clothes), and that the other man, whom he identified at the trial as being the appellant, was unmasked. He further testified that these men left him securely tied within a few feet of the roadside and went back toward the Cotten home. It appears that when these men entered the house Jackson's little girl, in her fright, ran out of the house and passed along the road near where her father was tied; that with her assistance he was able to get the wire loose from his ankles, but that the wire was untied and unwrapped from his wrists by someone else after he had returned to the house; and that upon returning there one of the three men was starting the truck, and the other two were coming out of the house. He identified this truck, which he had seen late that afternoon and also on that night when he first came out of the house to see what the occupants of the truck wanted, as the same truck driven by the appellant at the time of his subsequent arrest. He claimed that he was able to thus identify the truck on account of the fact that it had some bars broken out of the radiator front, and a patched fender which had been bolted. Others testified to having seen three men on this same truck in that vicinity on the evening of the attempted robbery. The appellant is alleged to have admitted to the officers that he drove this truck from Natchez to the Cotten home, but that he claimed that

when he learned what the other two men intended to do, he stayed on the outside and did not go into the house. Mrs. Cotten testified, however, that three men came in the house; that Maddox drew a gun on her; that one of the men struck her on the jaw; that some of them wrapped a blanket around her head and placed her on the bed; that after the men went out of the house, Howard Jackson came in to get a gun and some shells, and that when she went to the wardrobe to look for the shells she found the keys in the door which had been previously stolen by the said Maudie Lee Jackson, and which Maddox had gained possession of as aforesaid. She stated that the men neither demanded money nor found any. The evidence was sufficient however to warrant the jury in finding that they searched for money with the intention and in the attempt to take it against the will of their victims, after having placed them in fear by the use of firearms and the acts of violence testified to.

Mrs. Cotten was reasonably certain at the trial that she could identify the appellant as being one of the men who came into the house at the time of the attempted robbery. However, the conviction of the appellant must rest primarily upon the fact that there were three men present in the house at the time; that the identification of him by Howard Jackson was positive; and the fact that he is alleged to have admitted to the officers that he drove the truck and carried the other two parties to the scene of the crime.

We are of the opinion, from all of the facts and circumstances disclosed by the record, that the identification was sufficient to justify the submission of the case to the jury, and to warrant the conviction of the appellant.

We have also carefully considered the evidence offered on the motion for the change of venue, and we do not think that the trial court was in error in overruling the motion; nor that there was any error committed upon the trial that would justify a reversal of the case.

Affirmed.