THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GLEN SAM GUGLIOTTA, Defendant-Appellant.

Second District   No. 79-15

Opinion filed February 15, 1980.

Mary Robinson and Paul L. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant was convicted of arson and sentenced to four years probation. He appeals on the grounds that (1) the trial court erred in admitting evidence of three other fires, the prejudicial effect of which outweighed their probative value and (2) the evidence adduced at trial was not sufficient to prove the charge of arson beyond a reasonable doubt.

We agree with the defendant's contentions and reverse the conviction of the defendant.

The fire which was the basis of the information charging the defendant with arson occurred at about 6:15 a.m. on November 19, 1977, at an apartment building known as the Rock River Towers, 913 North Main Street, in Rockford. Prior to the commencement of trial, defense counsel presented a motion *in limine* to exclude any evidence of fires which occurred subsequent to that one. The motion was denied by the trial court on the ground that the subsequent fires could be relevant to show a pattern of conduct or design.

Thereafter, on trial, evidence was introduced of fires occurring on November 19, 1977, at 7 a.m., at a residence located at 1108 North Main Street, and on April 12, 1978, between 12:30 and 1 a.m., at a residence at 1112 North Main Street, and a second fire occurring at the Rock River Towers building.

The fire which the defendant was convicted of causing was discovered at about 6:15 a.m., on November 19, 1977, in an elevator and a front hall at the Rock River Towers apartment building.

Rick Rogers, the tenant of a third-floor apartment, had been host at a party which began about 1:30 a.m., and lasted until about 6 a.m. His guests were night people, musicians, bartenders and waitresses who worked until closing hours. During the course of the party, 30 or 40 people were in attendance.

The defendant, while not an acquaintance of the host, knew some of the people who were invited to the party and accompanied them to it. The party gradually wound down to about five or six persons by about 6 a.m. One of the female guests testified that she became annoyed with the defendant because he was "hanging around" and butting into a conversation between her and her sister. The girl asked Rogers, the host, to get the defendant to leave and Rogers told the defendant the party was over and he should leave. The defendant did so but immediately returned and demanded to know why he was being asked to leave. Another guest, Parlapiano, who was a friend of the host, told the defendant again to leave and "escorted" him to the door firmly and conducted him to the elevator. There was testimony that the defendant returned a third time and was again told to leave by Rogers and again escorted to the elevator

by Parlapiano. There was no testimony indicating any violence or belligerence on either side. No threats were made by the defendant and he left quietly.

Within 10 to 15 minutes of defendant's departure, a fire alarm sounded in the building. The party guests stayed in the apartment until the firemen came and told them there was a fire in the building.

Ruth Snygg, an employee of the building, discovered the fire. She arrived at about 6:15 a.m. She unlocked the entrance door and immediately smelled smoke. She went to the basement and searched for the source of the odor. She pushed the elevator button and discovered flame and smoke in the elevator. She rushed upstairs and called the fire department. Two men passing the building rendered assistance and put out a fire in the front hall curtains.

Charles Parrovechio, of the Rockford fire department, testified as an expert in detecting the cause of fires, and said that in sifting through the debris on the floor of the burned elevator, he came to the conclusion that the fire was of incendiary origin. He could not give any reason for his conclusion and could not tell the source of the ignition. There was no evidence that an accelerant had been used. This witness was unable to determine the actual cause of the fire and there was no other evidence adduced that the fire was of an incendiary origin.

Evidence was introduced of another fire on the same morning at about 7 a.m., two blocks from the Rock River Towers at a residence at 1108 North Main Street. This location was next door to the house in which the defendant lived. A Rockford police officer found smoldering newspapers under a wooden porch. The officer testified he talked to the defendant at the scene. Another witness, George Ellis, testified he had seen the defendant that morning at about 8 a.m., at the scene of the fire, and the defendant's clothes smelled of smoke. However, Ellis, on cross-examination, said the smell was like that of a burning house.

The defendant was arrested on the morning of November 19 and questioned regarding the fire at Rock River Towers. He denied any responsibility for the fire. He was charged by information with arson. He was released on bail, a condition of the bond being that he remove himself from his apartment at 1112 North Main Street and move in with his parents at 1225 Cunningham Street.

On April 12, 1978, while the defendant was out of jail awaiting trial, two fires occurred, one at his former apartment building at 1112 North Main Street, and a second fire at the Rock River Towers. Evidence of both of these occurrences was received at trial.

The fire at the Rock River Towers occurred at about 12:30 a.m. when the windbreak canopy was observed to be burning. The fire was extinguished and no cause was determined. The defendant was observed

by a witness at about 12:47 walking near the intersection of Whitman and Main Streets, a short distance from the Rock River Towers.

The fire at 1112 North Main Street occurred about 1 a.m. when a couch located on the front porch was discovered burning. Two days before this fire on April 10, 1978, the defendant, accompanied by his friend, came to this building to visit the apartment of an acquaintance, Don Larson. The defendant drank some beer and Larson asked him and his girl friend to leave since he wanted to take a bath. The defendant appeared chagrined and said he was never coming back again and Larson replied he was not going to lose any sleep over it.

Two days later, the couch fire was discovered on the front porch of the building housing Larson's apartment. Pictures of this fire were introduced in evidence. Testimony was offered that the defendant had visited Larson about two dozen times in the eight months preceding the fire, and about half the time he outstayed his welcome and was asked to leave, but there had never been any hostile words or threats between Larson and the defendant and there were none on April 10, 1978.

■■ Evidence of other crimes is not generally admissible, exceptions to the rule are seen where such evidence tends to prove a fact in issue or goes toward showing intent, motive, identity, absence of mistake or *modus operandi*. *People v. McDonald* (1975), 62 Ill. 2d 448; *People v. Di Giacomo* (1979), 71 Ill. App. 3d 56.

The State argues that the evidence of the other three fires is admissible to establish a common motive or design of the defendant and to connect him in time and location with the first Rock River Tower fire. We cannot agree with the State's argument. Evidence of "other" crimes cannot be admitted even for one of the purposes mentioned above, until it is shown that a crime actually took place, and that the defendant committed it or participated in its commission. *People v. Miller* (1977), 55 Ill. App. 3d 421, 426.

It was not shown at the trial that defendant participated in the commission of the fire on November 19 at 1108 North Main Street, or April 12, 1978, at 1112 North Main Street and at Rock River Towers on that same date. It was not shown that these fires were of incendiary origin and we cannot presume that fact.

■■ The defendant was observed at the scene of the 7 a.m. fire on November 19 at 1108 North Main Street. Mere presence at the scene of a crime is certainly not sufficient to establish guilt (*People v. Hendricks* (1976), 41 Ill. App. 3d 178), especially where, as here, defendant resided next door. While the witness, Ellis, testified the defendant "smelled like a burning house," he was standing near defendant while a house was burning, adjacent thereto; hardly sufficient to show defendant was the cause of the ignition of this fire.

The fire on April 12, 1978, on the porch of Don Larson's apartment building, can only be connected to defendant if one accepts the suggestion that this fire and the one he was being tried for both occurred after defendant had made somewhat of a nuisance of himself and had been asked by his host to leave; this being the motive for the arson. This evidence is too tenuous to support its introduction.

The connection of the defendant to the second fire at the Rock River Towers, occurring at about 12:35 at the windbreak canopy, is that the defendant was observed several blocks away about 12 to 15 minutes later.

■■ The evidence summarized above amounts to little more than a suspicion that defendant was involved in the commission of the three fires occurring after the first Rock River Tower fire. We therefore cannot find that the State has met its burden of competently showing that another crime occurred, and that the defendant committed it or participated in its commission. The evidence of the "other" fires, therefore, should have been excluded.

■■ The remaining question, then, is whether the competent evidence adduced at trial was sufficient to sustain defendant's conviction for arson. We hold it was not.

That there was a fire in the elevator and first floor drapes at the Rock River Towers on November 19 was proved by positive direct evidence. That these fires were caused by human agency, or in other words, that the fire was of incendiary origin, was not proved, considering Fire Officer Parrovechio's testimony that he could not determine the cause of the fire.

The evidence connecting the defendant to the crime was altogether circumstantial. The defendant was disappointed at having been ejected from a party. He left and a short time later the fire occurred. He did not engage in violence at the party and never made any threat to anyone.

The State has failed to prove that the defendant, and no one else, could have been responsible for the fire at the Rock River Towers on November 19, 1977.

For the reasons stated, the judgment of the circuit court of Winnebago County is reversed.

Judgment reversed.

SEIDENFELD and LINDBERG, JJ., concur.