119 Ill. App.3d 406 (1983)
456 N.E.2d 646
In re L.F., a Minor  (The People of the State of Illinois, Petitioner-Appellee,
v.
L.F., Respondent-Appellant).
No. 82-770.
Illinois Appellate Court  Second District.
Opinion filed November 4, 1983.
*407 *408 Paul E. Gaziano, of Remencius, Liebovich & Gaziano, of Rockford, for appellant.
Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Judgment affirmed.
JUSTICE LINDBERG delivered the opinion of the court:
Respondent-minor L.F. was charged with committing the offense of residential burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19-3) in a delinquency petition. At the adjudicatory hearing, it was established that Eddie Torrance and a friend arrived at Torrance's Rockford home after work on March 11, 1982, to find that the home had been broken into and that money, jewelry, and whiskey were missing. Torrance also found a hammer in the house which was given to the police and introduced into evidence.
Two Rockford policemen testified regarding their interviews with the minor and statements he gave to them. In both statements the minor admitted that he had watched Torrance leave his house to go to work and then broke into the house and took money, a gun, and some liquor. He also stated in both that the homeowner owed him money. In the second statement, he correctly identified Torrance's place of work, reported his use of a hammer to break in and that he left it behind, stated that he also took jewelry, and described the layout of the house. Although both original statements contained references by the minor to being "on a furlough from Joliet," these were excised when the statements were introduced into evidence. The minor's indication *409 in the second statement that he broke into Torrance's home in 1980 was not removed.
An employee of the Department of Corrections and another Rockford policeman testified regarding the minor's May 21, 1982, escape from custody while on the way to be arraigned on the present charge and his capture the next day. The minor's only evidence was the testimony of the Rockford policemen who responded to the Torrance break-in that Torrance at that time reported that nothing was missing.
The jury found the minor to be delinquent. As the State proved to the court two previous adjudications for felony offenses, the trial court sentenced him to confinement until his 21st birthday, pursuant to the Habitual Juvenile Offender Act (Ill. Rev. Stat. 1981, ch. 37, par. 705-12). He appeals.

ADMISSION OF EVIDENCE OF OTHER CRIMES
 1 The minor first contends that prejudicial error occurred when the trial court permitted the admission of evidence of other crimes committed by him. The minor specifically points to testimony regarding the fact that he had escaped from the custody of the Department of Corrections while being returned to Rockford for arraignment on the charge involved in this case (see Ill. Rev. Stat. 1981, ch. 38, par. 36-1) and to that portion of the minor's statement of March 15, 1982, in which he related that he had broken into the same house on a previous occasion (see Ill. Rev. Stat. 1981, ch. 38, par. 19-3).
Regarding the testimony of the minor's escape, evidence of escape or attempted escape from custody by an accused is admissible as a fact raising a presumption of guilt of the crime charged, even if the accused is being held on more than one charge. (People v. Yonder (1969), 44 Ill.2d 376, cert. denied sub nom. Guido v. Illinois (1970), 397 U.S. 975, 25 L.Ed.2d 270, 90 S.Ct. 1094; People v. Robinson (1980), 91 Ill. App.3d 1138, 415 N.E.2d 585.) Therefore, there was no error in the admission of the escape testimony.
 2 Regarding that portion of the minor's statement indicating a prior break-in, the trial court admitted it because it "not only shows his intent, but impeaches his statement in the earlier statement, his remark in the earlier statement to [Officer] Piccirilli that this was an individual who owed him money." Although it is generally true that evidence of crimes other than the one for which the accused is being tried is not admissible, there are exceptions, including evidence of separate offenses which also tend to prove a fact in issue or which go to show motive, intent, identity, absence of mistake or modus *410 operandi. (People v. McDonald (1975), 62 Ill.2d 448, 455.) In fact, it has been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. (62 Ill.2d 448, 455.) On this appeal, the State seeks to justify the admission of the statement regarding the prior break-in as relevant to motive and intent.
The evidence in question is a portion of defendant's March 15, 1982, statement to Officer Hoffman. After describing the manner of the break-in at issue, defendant stated the following:
"As soon as you walk in you turn left and there is a closet. Thats [sic] the first place I went because the last time I broke in there, there was [sic] about $800.00 or $900.00 in there. There was [sic] also two pistols in there at that time. It was 1980 when I broke in that time."
 3 These remarks tend to show that defendant's intent upon breaking in was to obtain money and possibly goods, such as the pistols, just as he had been able to do in the past. The intent to commit a felony or theft is a necessary element of the offense of residential burglary. (Ill. Rev. Stat. 1981, ch. 38, par. 19-3(a).) Therefore, the remarks were relevant to proof of the charged offense. This is especially true here where the minor, in other parts of his statements, averred that he broke into the victim's home to take money that the victim owed to him. In People v. Henderson (1974), 18 Ill. App.3d 457, 309 N.E.2d 242, evidence of a previous burglary by the defendant of the same premises three days earlier than the charged burglary was admissible to prove intent where statements made by the defendant to police had indicated a motive in the break-in to assist a woman who had cried for help. Similarly, the minor's remarks here tend to make an innocent motive less likely and are therefore probative on the issue of the minor's purpose. Furthermore, the challenged remarks also reveal the reason why defendant was aware of the layout of the burglarized premises, another relevant factor. (See People v. McLain (1975), 32 Ill. App.3d 998, 337 N.E.2d 82.) Thus, there was no error in the admission of the minor's reference to the previous break-in.
Defendant cursorily states that "the State ought to have been required to establish the occurrence of the other crime," citing People v. Gugliotta (1980), 81 Ill. App.3d 362, 401 N.E.2d 262. We find that defendant has waived this argument because, although employing a motion in limine, an oral objection and a post-trial motion to challenge the use of his statement regarding the prior burglary, at no point was this particular reasoning brought before the trial court. See *411 People v. Curry (1973), 56 Ill.2d 162.
In any event, no error was committed. People v. Gugliotta (1980), 81 Ill. App.3d 362, 401 N.E.2d 262, stated the rule that evidence of other crimes cannot be admitted even for a proper purpose until it is shown that a crime actually took place and that the defendant committed it or participated in its commission. (81 Ill. App.3d 362, 365, 401 N.E.2d 262, 264.) The other crimes in Gugliotta were fires which the court held were not shown at trial to have been set by the defendant nor even to be of incendiary origin. Although it must be shown that the other crime occurred and that the accused committed it or participated in its commission, proof of the other crime need not be beyond a reasonable doubt. (People v. Walters (1979), 69 Ill. App.3d 906, 387 N.E.2d 1230.) In Walters, the court held there to be sufficient evidence of the occurrence of the other crimes and the defendant's participation in their commission. The only evidence of the other crimes was a police officer's testimony that he had investigated robberies and murders which occurred on certain dates and the statements of the defendant regarding his participation in those crimes. Here, the only evidence of the other crime is the minor's own statement; however, although there is no corroborating evidence such as the testimony of the fact of police investigation as in Walters, the minor's admission of the prior burglary is sufficient evidence of the occurrence of the crime and the minor's participation in it to allow use of the otherwise admissible statement.
 4 Even if error were found in the admission of evidence of other crimes, the error would be harmless. Where the evidence of the defendant's guilt is overwhelming, an error in the admission of evidence of other crimes committed by the defendant is harmless. (See People v. Carlson (1982), 92 Ill.2d 440; People v. James (1981), 100 Ill. App.3d 884, 427 N.E.2d 248.) Here, the minor provided the police with two statements detailing how he had broken into the victim's home and taken liquor, jewelry, money and a gun. There were also numerous items of corroborating evidence, such as the victim's allegations of property taken, the details of the burglarized premises, and the hammer that the minor indicated he had left behind. In light of the minor's statements and the corroborating evidence, the evidence of the minor's guilt is so overwhelming as to render any error in the admission of evidence of other crimes to be harmless.

CONSTITUTIONALITY OF THE HABITUAL JUVENILE OFFENDER ACT
 5 The minor contends that the trial court erred in ruling that the State may impeach him through evidence of prior juvenile adjudications. *412 Although section 5-12 of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 705-12), commonly referred to as the Habitual Juvenile Offender Act (hereinafter Act), permits that sort of impeachment under certain conditions, the minor contends that the statute is unconstitutional as a legislative encroachment on a judicial function. He argues that the applicable rule is that established in People v. Montgomery (1971), 47 Ill.2d 510, and that the statute is void because it conflicts with that rule.
The challenged part of the Act is that paragraph of subsection (c) of section 5-12 which reads as follows:
"No prior adjudication shall be alleged in the petition, and no evidence or other disclosure of such adjudication shall be presented to the court or jury during any adjudicatory hearing provided for under this section, unless otherwise permitted by the issues properly raised in such hearing. In the event the minor who is the subject of these proceedings elects to testify on his own behalf, it shall be competent to introduce evidence, for purposes of impeachment, that he has previously been adjudicated a delinquent minor upon facts which, had he been tried as an adult, would have resulted in his conviction of a felony. Introduction of such evidence shall be according to the rules and procedures applicable to the impeachment of an adult defendant by prior conviction." Ill. Rev. Stat. 1981, ch. 37, par. 705-12(c).
Thus, in proceedings against the minor prosecuted as a habitual juvenile offender, the minor may be impeached by prior juvenile adjudications subject only to the rules of evidence for impeaching an adult criminal defendant by prior convictions.
People v. Montgomery (1971), 47 Ill.2d 510, is the case which established the judicial rule for impeachment of witnesses through prior convictions. Montgomery endorsed the then-proposed Federal Rule of Evidence 609 (51 F.R.D. 391) as the rule for Illinois. While that rule establishes certain guidelines for the admission of convictions for impeachment purposes, subsection (d) of Rule 609 categorically bars the use of juvenile adjudications when the witness is the accused in a criminal prosecution. Although the issue in Montgomery did not involve subsection (d) of Rule 609, subsequent cases have interpreted Montgomery as endorsing all of that rule (People v. Yost (1980), 78 Ill.2d 292, 296), including subsection (d) (People v. Puente (1981), 98 Ill. App.3d 936, 940, 424 N.E.2d 775, 779).
The central problem involved in the resolution of this issue is whether the rule of Montgomery is to be applied to juvenile court proceedings. *413 The minor argues that Montgomery is to be applied directly to this type of case, resulting in a bar against the use of his prior adjudications for impeachment. Because the statutory provision would permit a different result in a judicial matter, he contends, it is void as unconstitutional. The State argues, on the other hand, that the courts have never intended to apply Montgomery to juvenile proceedings. The Act legislatively incorporates Montgomery only to the extent that its rule on the use of prior convictions, but not the use of prior juvenile adjudications, in criminal cases is to be applied to the use of prior adjudications in habitual juvenile offender cases.
The Montgomery opinion itself did not limit its rule to criminal cases, stating that "the provisions of this Rule should be followed in future cases." (People v. Montgomery (1971), 47 Ill.2d 510, 519.) In Knowles v. Panopoulos (1977), 66 Ill.2d 585, the supreme court held that Montgomery is applicable to civil cases as well as criminal. However, no case has been found which either applies or refuses to apply the rule of Montgomery to proceedings under the Act. Although "the rules of evidence in the nature of criminal proceedings" are generally applicable in delinquency cases, this is due to such a provision in a different section of the Juvenile Court Act. Ill. Rev. Stat. 1981, ch. 37, par. 704-6(1).
 6 That evidentiary rules in delinquency cases, subject to constitutional restraints, should be determined by the Juvenile Court Act rather than by general criminal case rules enunciated by the judiciary is in conformity with the logic and purpose of the Juvenile Court Act, which are distinctly different from those of the Criminal Code of 1961. As stated in In re Beasley (1977), 66 Ill.2d 385, cert. denied (1978), 434 U.S. 1016, 54 L.Ed.2d 761, 98 S.Ct. 734:
"Section 2-9 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702-9) clearly indicates that proceedings under the Act are not criminal. Although such a proceeding retains certain adversary characteristics, it is not in the usual sense an adversary proceeding, but it is one to be administered in a spirit of humane concern for and to promote the welfare of the minor as well as to serve the best interests of the community." 66 Ill.2d 385, 389.
In In re Beasley (1977), 66 Ill.2d 385, 389, the supreme court held that its promulgated rule relating to standards for acceptance of guilty pleas (58 Ill.2d R. 402), was intended to apply only to criminal cases and not to juvenile delinquency proceedings. This was despite the fact that the Juvenile Court Act does not contain its own rule relating to acceptance of guilty pleas. In the present case, the Juvenile *414 Court Act has a specific evidentiary rule on the subject at issue.
In People ex rel. Carey v. Chrastka (1980), 83 Ill.2d 67, the supreme court rejected several constitutional challenges to the Act. While none of these challenges was framed precisely the same as that here, the court upheld various provisions of the statute as valid means to serve the purposes of the juvenile court system. The impeachment usage of prior adjudications, the provision at issue here, was upheld despite a contention that it violated the fundamental fairness concept of the due process clause in that it improperly apprised juries of those adjudications and potentially influenced the jury's determination of whether the offense at issue had been committed. In rejecting that argument, the court expressed approval of the provision with the following language:
"We acknowledge that the accused's credibility will be damaged if he chooses to testify and the prosecution introduces evidence of the prior adjudications in impeachment, but this is the purpose of impeachment regardless of the context in which it is done and the consequences that result. It is improper prejudice with which we are concerned, and if the Act is correctly applied, this will not result. The Act is carefully drafted to avoid unfair prejudice * * *. By providing these safeguards, the Act actually goes beyond those required by the United States Supreme Court in Spencer [Spencer v. Texas (1967), 385 U.S. 554, 17 L.Ed.2d 606, 87 S.Ct. 648]." 83 Ill.2d 67, 76-77.
 7 Since there is no indication that the supreme court intended Montgomery to directly apply to juvenile proceedings, this court will not presume such an intent, especially in light of the presumption of validity of statutes (Gill v. Miller (1982), 94 Ill.2d 52; Scott v. Department of Commerce & Community Affairs (1981), 84 Ill.2d 42), the court's characterization of the subject provision in People ex rel. Carey v. Chrastka (1980), 83 Ill.2d 67, as providing sufficient safeguards so as to avoid improper prejudice, and the different purposes of the Criminal Code of 1961 and the Juvenile Court Act. If People v. Montgomery (1971), 47 Ill.2d 510, does not apply to delinquency proceedings except in the manner provided by the Act, there is no conflict between Montgomery and the Act.
Although the minor does not argue the unconstitutionality of the Act except through its alleged nonconformity to Montgomery, an improper legislative encroachment upon a judicial function is possible even in the absence of conflict with case law. With regard to laws governing judicial practice, the General Assembly does not have the power to enact laws which unduly infringe upon the inherent powers *415 of the judiciary or conflict with a rule of the supreme court. (People v. Youngbey (1980), 82 Ill.2d 556.) None of the promulgated Supreme Court Rules conflicts with the subject statutory provision. With regard to inherent judicial powers relating to evidentiary matters, it has been held that the legislature may not declare the weight to be given to evidence or what evidence shall be conclusive proof of an issue of fact. (Alton R.R. Co. v. Illinois Commerce Com. (1943), 382 Ill. 478; People v. Buford (1982), 110 Ill. App.3d 46, 441 N.E.2d 1235.) The subject provision attempts to do neither. Thus, even aside from the rule of Montgomery, we fail to see how the challenged statute encroaches upon an exclusively judicial function.
An alternative argument suggested by the State is that, even if the rule of Montgomery were intended to apply to juvenile proceedings, a literal reading of proposed Rule 609(d) would still allow the impeachment use of the minor's prior adjudications. This is because the rule expresses a categorical bar on such evidence only if the witness is the "accused" in a criminal case. (See Advisory Committee's Note to Subdivisions (d) of Rule 609 in Appendix 6 of Am.Jur.2d, New Topic Service: Federal Rules of Evidence, at 501.) Although Rule 609 as finally adopted by Congress would permit some discretion in admitting prior adjudications for impeaching witnesses other than the accused only in criminal cases (i.e., the categorical bar applies for all witnesses in noncriminal cases) (Fed. R. of Evid. 609(d)), it is the 1971 draft version, proposed by the Supreme Court, which was endorsed by the Illinois Supreme Court in Montgomery and which continues to be the rule in Illinois. (People v. Yost (1980), 78 Ill.2d 292, 295-96.) Since a minor prosecuted under the Act is not an "accused" in a criminal case, the alternative argument goes, the impeachment usage of prior adjudications is permissible under proposed Rule 609 (d) "if conviction of the offense would be admissible to attack the credibility of an adult and the judge is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence."
The problem with the adoption of this approach is that if the supreme court had intended that proposed Rule 609 apply in delinquency cases notwithstanding contrary statutory provisions, its purpose would most probably be to grant minors prosecuted for delinquency the same protections given to adults "accused" of criminal offenses. Furthermore, while this approach does permit some discretion in the admission of prior adjudications, it does so under a much stricter standard than that used to admit evidence of prior convictions. It is the more liberal standard that is employed by subsection (c) of the statute; the parties have not addressed whether admission *416 of the prior adjudications would have been proper under the stricter standard found in proposed Rule 609(d).
 8, 9 The minor also contends that, if the statute does not improperly impinge upon the judicial power, it is unconstitutional under the equal protection clause (U.S. Const., amend. XIV, sec. 1; Ill. Const. 1970, art. 1, sec.2). The basis of this equal protection argument is that the statute would permit the impeachment usage of prior adjudications against a minor prosecuted as a habitual juvenile offender while such usage against a minor prosecuted as an adult is prohibited. Because under certain conditions a minor may be prosecuted as an adult (Ill. Rev. Stat. 1981, ch. 37, par. 702-7), this same argument could just as well be made against any of the various provisions of the Juvenile Court Act which provide for different procedures and dispositions than are possible in criminal prosecutions. However, the fact that a minor may be treated as an adult in some cases and not in others, pursuant to the standards set out in section 2-7 of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 702-7), does not deny him equal protection under the law. (People v. Sprinkle (1972), 4 Ill. App.3d 6, 280 N.E.2d 29, aff'd (1974), 56 Ill.2d 257, cert. denied (1974), 417 U.S. 935, 41 L.Ed.2d 239, 94 S.Ct. 2650.) In People ex rel. Carey v. Chrastka (1980), 83 Ill.2d 67, 80, the supreme court held that it was not a violation of equal protection rights for the Act to permit a potentially longer period of confinement than was possible for a habitual offender prosecuted under adult criminal laws. Likewise, it was not an equal protection violation for the Juvenile Court Act not to provide for jury trials in delinquency prosecutions. (In re Presley (1970), 47 Ill.2d 50.) Thus, a minor prosecuted as an adult, who is not subject to the impeachment use of prior adjudications, must meet the guidelines of section 2-7 and is subject to very different dispositions than is a minor prosecuted as a habitual juvenile offender, who may be so impeached. We find no equal protection violation.
Finally with regard to the minor's second allegation of error, he does not demonstrate any prejudice resulting from the alleged error. Evidence of the prior adjudication was not introduced because the minor chose not to testify, purportedly for fear of the prejudice resulting from the impeachment. As already noted, evidence of the minor's guilt was overwhelming. The minor did not, either at trial or on appeal, suggest any testimony which he might have given that would have created a reasonable doubt as to his guilt. Where a defendant is improperly impeached on cross-examination through evidence of a prior conviction, reversal is not required unless the error has deprived *417 the defendant of substantial justice or influenced his determination of guilt. (People v. Madison (1974), 56 Ill.2d 476; People v. Adams (1982), 106 Ill. App.3d 467, 435 N.E.2d 1203.) In Madison, as in the present case, the defendant's inculpatory statement and substantial circumstantial evidence clearly established his guilt. (56 Ill.2d 476, 489.) There could be no greater prejudice here where the minor voluntarily declined to testify in order to prevent the State's use of the evidence of prior adjudications which could not have influenced the determination of guilt.

DENIAL OF A HEARING ON THE ESCAPE STATEMENT
 10 The minor's final contention is that the trial court erred in refusing to hear his motion to suppress a statement that he had made to Officer Mary Denton relating to his escape on May 21, 1982. Although the trial court had originally granted the minor's motion to exclude evidence of the escape, it later reversed its ruling on the State's motion to reconsider. The minor moved to suppress evidence of the statement made to Officer Denton, alleging inter alia that the statement was involuntary. The State indicated that it would not use that statement in its direct case, but reserved the right to use it at a later time. The trial court refused to hear the issue at that time, indicating that it would address it when it had to, but that it would not take the time for a hearing on an issue which might be mooted. The minor then moved in limine to prevent use of the statement for impeachment purposes and the court denied the motion. At the adjudicatory hearing, the minor did not testify, and evidence of the statement made to Officer Denton was never introduced.
The question to be resolved is whether the trial court was obligated to hear the motion prior to trial. The minor argues that such a hearing was necessary so that his constitutional rights would not be violated and so that he might be able to prepare his defense. However, while a defendant has a constitutional right at some stage of the proceedings against him to object to the use of his confession and to have a fair hearing and a reliable determination upon the issue of voluntariness (Jackson v. Denno (1964), 378 U.S. 368, 12 L.Ed.2d 908, 84 S.Ct. 1774; People v. Bell (1977), 50 Ill. App.3d 82, 365 N.E.2d 203), the minor was not denied that hearing "at some stage." Rather, he was only denied a hearing prior to the presentation of his case. The fact that no hearing was held was due to his choice not to testify, rendering moot the issue of admissibility of impeachment evidence.
As to the minor's ability to prepare his defense, we can find no basis for requiring the hearing on the impeachment use of his allegedly *418 involuntary statement before he testified. The statute the minor cites, section 114-11 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114-11), prescribes the procedure for a motion to suppress evidence of a confession on the ground that it was not voluntary. Although section 114-11(c) requires the trial court to conduct a hearing if the motion is sufficient, no particular time for the hearing is mandated.
Cases have held that a trial court may properly refrain from making a ruling on the admissibility of a defendant's prior convictions for impeachment purposes until after the defendant has testified, even though the withholding of a ruling makes defense strategy more difficult. (People v. Rose (1979), 75 Ill. App.3d 45, 52, 393 N.E.2d 698, 703-04; People v. Hunter (1978), 61 Ill. App.3d 588, 598, 376 N.E.2d 1065, 1072; People v. Barksdale (1974), 24 Ill. App.3d 489, 496, 321 N.E.2d 489, 494-95.) However, Rose, Hunter, and Barksdale might be distinguished from the present case in that those cases involved prior convictions instead of allegedly involuntary statements as the impeachment evidence at issue. Balancing probativeness against unfair prejudicial effect is a factor in determining the impeachment admissibility of prior convictions. (See People v. Montgomery (1971), 47 Ill.2d 510.) Rose, Hunter, and Barksdale reasoned that a trial court might better be able to ascertain the probativeness and prejudicial effect of the challenged evidence after it has heard the defendant's testimony. That same reasoning is not applicable with regard to a hearing solely on voluntariness of an out-of-court statement, where the factors for that determination (see, e.g., Brown v. Illinois (1975), 422 U.S. 590, 603-04, 45 L.Ed.2d 416, 427, 95 S.Ct. 2254, 2261-62; People v. Washington (1980), 90 Ill. App.3d 631, 634, 413 N.E.2d 170, 172, cert. denied (1981), 454 U.S. 846, 70 L.Ed.2d 132, 102 S.Ct. 162) may easily be ascertained without first hearing the defendant's trial testimony.
In any event, the minor has not shown any prejudice resulting from the trial court's refusal to hear its motion prior to his testifying. As noted in each of the prior two issues, the evidence of the minor's guilt was overwhelming. The challenged statement was not introduced. If the requested hearing had been held before trial, and the statement suppressed, the minor does not suggest what unimpeached testimony he might have provided. Moreover, the introduction of the statement by the minor relating to his escape would have been harmless in that two State's witnesses had already testified about the escape. See People v. Garcia (1981), 95 Ill. App.3d 792, 800-01, 420 N.E.2d 482, 489.
*419 The judgment of the circuit court of Winnebago County is affirmed.
Affirmed.
SEIDENFELD, P.J., and UNVERZAGT, J., concur.